UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARKING TECHNOLOGY HOLDINGS LLC,

Plaintiff,

v.

PARK ASSIST, LLC,

Defendant.

Civil Action No. 1:20-cv-03156-PGG

JURY TRIAL DEMANDED

[PROPOSED] STIPULATED CONFIDENTIALITY AGREEMENT
AND PROTECTIVE ORDER

Plaintiff Parking Technology Holdings LLC ("Plaintiff" or "PTH") and Defendant Park

Assist, LLC ("Defendant" or "Park Assist") anticipate that documents, testimony, or information

containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive

information are likely to be disclosed or produced during the course of discovery and request that

the Court enter this Order setting forth the conditions for treating, obtaining, and using such

information.

WHEREAS, all the parties to this action (collectively the "Parties" and individually a

"Party") request that this Court issue a protective order pursuant to Federal Rule of Civil

Procedure 26(c) to protect the confidentiality of nonpublic and competitively sensitive

information that they may need to disclose in connection with discovery in this action;

WHEREAS, the Parties, through counsel, agree to the following terms; and

WHEREAS, this Court finds good cause exists for issuance of an appropriately tailored

confidentiality order governing the pretrial phase of this action,

IT IS HEREBY ORDERED that any person subject to this Order – including without

limitation the Parties to this action (including their respective corporate parents, successors, and

assigns), their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Order — will adhere to the following terms, upon pain of contempt:

1.      With respect to "Discovery Material" (as defined in this paragraph) that a person has designated as Protected Material pursuant to this Order, no person subject to this Order may disclose such Protected Material to anyone else except as this Order expressly permits:

(a)     "Discovery Material" means information of any kind produced or disclosed in the course of discovery in this action.

(b)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(c)     "Patent-in-suit" means U.S. Patent No. 7,893,848 ("'848 patent") and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

(d)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)     "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(f)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include:  (i) advertising materials that have been

2

actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g) "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h) "Source Code" means human-readable programming language text that defines software, firmware, and/or circuits. Source code further includes the text of any comments associated with any of the foregoing, any files containing any of the foregoing, and all directory and folder structures in which such files are maintained. Source code includes, but is not limited to, any text written in any high-level programming language defining firmware and/or software functionalities implemented on an integrated circuit, such as files containing text written in C, C++, C#, Objective C, MATLAB, assembly language and macros, digital signal processor ("DSP") programming languages, and other programming languages. Source code further includes any ".include" files, "make" files, "link" files, and other human-readable text files used in the generation and/or building of firmware or software directly executed on a microprocessor, microcontroller, or DSP, and includes all directory and folder structures in which such files are maintained, any text files containing Source Code in VHDL, Verilog, and other Hardware Description Language ("HDL") formats, including but not limited to, Register Transfer Level ("RTL") descriptions, and text files containing circuit descriptions in SPICE or other circuit netlist formats.

2. The Party or person producing or disclosing Discovery Material ("Producing Party") may designate as Protected Material only the portion of such material that it reasonably and in good faith believes consists of:

3

(a)  previously non-disclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

(b)  previously non-disclosed material relating to ownership or control of any non-public company;

(c)  previously non-disclosed business plans, product-development information, or marketing plans;

(d)  any information of a personal or intimate nature regarding any individual; or

(e)  any other category of information this Court subsequently affords confidential status.

3.  With respect to the portion of any Discovery Material designated Protected Material other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such portion as "Confidential" or "Confidential - Outside Attorneys' Eyes Only" by: (a) stamping or otherwise clearly marking as "Confidential" or "Confidential - Outside Attorneys' Eyes Only" the protected portion in a manner that will not interfere with legibility or audibility; and (b) producing for future public use another copy of said Discovery Material with the Protected Material redacted.

4.  A Producing Party or its counsel may designate deposition exhibits or portions of deposition transcripts as Protected Material either by: (a) indicating on the record during the deposition that a question calls for Protected Material, in which case the reporter will bind the transcript of the designated testimony in a separate volume and mark it as "Confidential Information Governed by Protective Order" or "Confidential - Outside Attorneys' Eyes Only" or (b) notifying the reporter and all counsel of record, in writing, within 30 days after a deposition

4

has concluded, of the specific pages and lines of the transcript that are to be designated "Confidential" or "Confidential - Outside Attorneys' Eyes Only," in which case all counsel receiving the transcript will be responsible for marking the copies of the designated transcript in their possession or under their control as directed by the Producing Party or that person's counsel. During the 30-day period following a deposition, all Parties will treat the entire deposition transcript as if it had been designated Confidential.

5.     If at any time before the trial of this action a Producing Party realizes that it should have designated as Protected Material some portion(s) of Discovery Material that it previously produced without limitation, the Producing Party may so designate such material by so apprising all prior recipients in writing. Thereafter, this Court and all persons subject to this Order will treat such designated portion(s) of the Discovery Material as Protected Material.

6.     Nothing contained in this Order will be construed as: (a) a waiver by a Party or person of its right to object to any discovery request; (b) a waiver of any privilege or protection; or (c) a ruling regarding the admissibility at trial of any document, testimony, or other evidence.

7.     Where a Producing Party has designated Discovery Material as Confidential, other persons subject to this Order may disclose such information only to the following persons:

(a)     up to two (2) employees of the Parties, provided each such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(b)     counsel retained specifically for this action, including any paralegal, clerical, or other assistant that such outside counsel employs and assigns to this matter;

(c)     outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter;

5

(d)      any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(e)      as to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

(f)      any witness who counsel for a Party in good faith believes may be called to testify at trial or deposition in this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(g)      any person a Party retains to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(h)      stenographers engaged to transcribe depositions the Parties conduct in this action; and

(i)      this Court, including any appellate court, its support personnel, and court reporters.

8.      Before disclosing any Confidential Discovery Material to any person referred to in subparagraphs 7(d), 7(f), or 7(g) above, counsel must provide a copy of this Order to such person, who must sign a Non-Disclosure Agreement in the form annexed as an Exhibit hereto stating that he or she has read this Order and agrees to be bound by its terms. Said counsel must retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel either before such person is permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first.

6

9.    Where a Producing Party has designated Discovery Material as "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE", other persons subject to this Order may disclose such information only to the following persons:

(a)    counsel retained specifically for this action, including any paralegal, clerical, or other assistant that such outside counsel employs and assigns to this matter;

(b)    outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto and a copy produced to the Producing Party;

(c)    any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(d)    as to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

(e)    any person a Party retains to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided that the procedures in section 24 below are followed before disclosure to such person;

(f)    stenographers engaged to transcribe depositions the Parties conduct in this action; and

(g)    this Court, including any appellate court, its support personnel, and court reporters.

7

10.     In accordance with paragraph 2 of this Court's Individual Practices, any party filing documents under seal must simultaneously file with the Court a letter brief and supporting declaration justifying – on a particularized basis – the continued sealing of such documents. The parties should be aware that the Court will unseal documents if it is unable to make "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006).

11.     The Court also retains discretion whether to afford confidential treatment to any Discovery Material designated as Confidential and submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court. All persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial, even if such material has previously been sealed or designated as Confidential.

12.     In filing Confidential Discovery Material with this Court, or filing portions of any pleadings, motions, or other papers that disclose such Confidential Discovery Material ("Confidential Court Submission"), the Parties shall publicly file a redacted copy of the Confidential Court Submission via the Electronic Case Filing System. The Parties shall file an unredacted copy of the Confidential Court Submission under seal with the Clerk of this Court, and the Parties shall serve this Court and opposing counsel with unredacted courtesy copies of the Confidential Court Submission.

13.     Any Party who objects to any designation of confidentiality may at any time before the trial of this action serve upon counsel for the Producing Party a written notice stating with particularity the grounds of the objection. If the Parties cannot reach agreement promptly,

counsel for all affected Parties will address their dispute to this Court in accordance with paragraph 4(E) of this Court's Individual Practices.

14.     Any Party who requests additional limits on disclosure may at any time before the trial of this action serve upon counsel for the recipient Parties a written notice stating with particularity the grounds of the request. If the Parties cannot reach agreement promptly, counsel for all affected Parties will address their dispute to this Court in accordance with paragraph 4(E) of this Court's Individual Practices.

15.     Recipients of Confidential Discovery Material under this Order may use such material solely for the prosecution and defense of this action and any appeals thereto, and not for any business, commercial, or competitive purpose or in any other litigation proceeding. Nothing contained in this Order, however, will affect or restrict the rights of any Party with respect to its own documents or information produced in this action.

16.     Nothing in this Order will prevent any Party from producing any Confidential Discovery Material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided that such Party gives written notice to the Producing Party as soon as reasonably possible, and if permitted by the time allowed under the request, at least 10 days before any disclosure. Upon receiving such notice, the Producing Party will bear the burden to oppose compliance with the subpoena, other compulsory process, or other legal notice if the Producing Party deems it appropriate to do so.

17.     Each person who has access to Discovery Material designated as Confidential pursuant to this Order must take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

9

18.     Within 60 days of the final disposition of this action – including all appeals – all recipients of Confidential Discovery Material must either return it – including all copies thereof – to the Producing Party, or, upon permission of the Producing Party, destroy such material – including all copies thereof. In either event, by the 60-day deadline, the recipient must certify its return or destruction by submitting a written certification to the Producing Party that affirms that it has not retained any copies, abstracts, compilations, summaries, or other forms of reproducing or capturing any of the Confidential Discovery Material. Notwithstanding this provision, the attorneys that the Parties have specifically retained for this action may retain an archival copy of all pleadings, motion papers, transcripts, expert reports, legal memoranda, correspondence, or attorney work product, even if such materials contain Confidential Discovery Material. Any such archival copies that contain or constitute Confidential Discovery Material remain subject to this Order.

19.     This Order will survive the termination of the litigation and will continue to be binding upon all persons to whom Confidential Discovery Material is produced or disclosed.

20.     This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

21.     <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

(a)     <u>Basic Principles</u>. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b) <u>Secure Storage, No Export</u>. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

(c) <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(i) Plaintiff's counsel having access to defendant's Protected Materials produced in this case shall be barred from prosecuting patents on behalf of Plaintiff during the case and for two (2) years after the conclusion of the case (including appeals) with respect to the subject matter of the patent-in-suit, but such bar shall not include participation in post-grant review proceedings, including reexams, reissues and inter partes reviews.

(ii) Plaintiff's counsel who receive and access defendant's Protected Materials produced in this case (specifically, materials designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE") shall not advise, counsel, participate, or assist in the acquisition of any patents or patent applications that (1) relate to the subject matter of the asserted patent in this case; or (2) relate to the subject matter of the "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" that such individual reviewed. For the avoidance of doubt, the

11

"acquisition" of patents under this section includes any analysis or evaluation of patents for the purposes of evaluating whether, or for what price, to acquire them. This provision shall not prohibit counsel from advising clients on other legal matters involving patents, including validity and settlement negotiations. These prohibitions shall begin when the "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" OR "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" are first received by the affected individual, and shall end two (2) years after the settlement or dismissal of the defendant from this action or the final non-appealable termination of this action.

(d)     Limitations.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material. Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

22.     DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"

(a)     A Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be

12

subject to the provisions set forth in Paragraph 23 below, and may be disclosed, subject to Paragraph 23 below, solely to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties;

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)     The Court, jury, and court personnel;

(v)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

13

(vi)    Any other person with the prior written consent of the Producing Party.

23.    <u>DISCLOSURE AND REVIEW OF SOURCE CODE</u>

(a)    Any Source Code that is produced by Plaintiff shall be made available for remote inspection (e.g., using a VPN or third-party software solution such as https://securereview.com) and/or for in-person inspection in electronic format at the Los Angeles office of its outside counsel, Russ August & Kabat, or at any other location mutually agreed by the Parties. Any Source Code that is produced by Defendant will be made available for remote inspection (e.g., using a VPN or third-party software solution such as https://securereview.com) and/or for in-person inspection in electronic format at the New York, NY office of its outside counsel, Phillips Nizer LLP, or at any other location mutually agreed by the Parties. Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b)    Once the Producing Party notifies the Receiving Party that the Source Code is available for in-person inspection, the Receiving Party shall provide five (5) days' notice prior to the first in-person inspection. The Receiving Party shall provide three (3) days' notice prior to any additional in-person inspections. These notice periods shall be shortened to three (3) days and two (2) days, respectively, for any remote inspections of Source Code. Notwithstanding the foregoing, advance notice for continuation of an ongoing review shall be sufficient when provided by 3:00 p.m. local time during the course of a review session, for such review to continue on the next subsequent business day (subject to availability of the Source Code Computer).

(c)     Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Parties:

(i)     All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts for remote inspection (e.g., using a VPN or third-party software solution) and/or for in-person inspection. For in-person review, the Source Code shall be made available in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port, unless the Parties agree upon another printing solution), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). Upon request by the Receiving Party and approval by the Producing Party, the Producing Party will make best efforts to install reasonable analysis tools appropriate for the type of Source Code, supplied by the Producing Party, at the Receiving Party's expense, with a license for such tools supplied by the Receiving Party at least three (3) business days in advance of the date upon which the reviewer wishes to have the software tools available for use on the Source Code Computer. Such software shall not be capable of compiling, assembling or building the source code and must otherwise be consistent with the security purposes of this Protective Order and, for example, shall not re-activate the computer's ports, reactivate any of its wireless devices or capabilities, re-activate electronic or physical copying, or otherwise defeat the security provisions.

15

(ii)     The Source Code Computer will remain available for review by the Receiving Party through the close of expert discovery.

(iii)    Other than as described below in Paragraph 23(c)(iii)(A)-(J) or unless agreed to by the Producing Party, no outside electronic devices or recording equipment, including but not limited to cameras, video recording equipment, sound recording equipment, smartphones, tablets, cell phones, computers and laptops, floppy drives, CDs, DVDs, USB-connectable devices, zip drives or drives of any kind, peripheral equipment, or other computer hardware shall be permitted in the room with the Source Code Computer.

A.     To enable electronic note taking during Source Code reviews, the Producing Party shall also provide an additional "note-taking" computer loaded with at least Microsoft OneNote and Microsoft Word software, unless otherwise agreed by the Parties. The note-taking computer shall either be a portable laptop or be located in close proximity to the Source Code Computer to facilitate electronic note taking.

B.     At the beginning of a Source Code review session, the Producing Party shall, when requested by the reviewer, upload to the note-taking computer an encrypted notes file (e.g., using an encrypted USB thumb drive from the Producing Party).

C.     The reviewer may then decrypt and open the notes file using the note-taking computer for the purpose of taking notes during the Source Code review session.    During the Source Code review session, the Producing Party may disable any input and/or output devices on the note-taking computer (e.g., disable any USB ports, Wi-Fi or Ethernet connectivity, and/or optical disc drives) except as necessary to enable the reviewer to take notes (e.g., enable mouse and keyboard).

16

D. At the end of a Source Code review session, the reviewer may save any notes in the same encrypted notes file. The Producing Party shall, when requested by the reviewer, download from the note-taking computer the encrypted notes file and provide an electronic copy to the reviewer.

E. Notwithstanding this stipulation, no reviewer may at any time copy or include in electronic notes any portions or sections of the Source Code. Reviewers using electronic note-taking will be directed by undersigned counsel not to copy or include in electronic notes any portions or sections of the Source Code.

F. If requested by the Producing Party, a copy of the encrypted notes file shall remain on the note-taking computer, so long as it remains encrypted.

G. If requested by the Producing Party, a representative for the Producing Party may oversee the transfer of the encrypted notes file from the secure data storage device to the note-taking computer, and vice-versa, without reviewing the substance of the electronic notes.

H. The reviewer shall not take notes electronically on the Source Code Computer itself or any other computer or electronic device (besides the note-taking computer) while conducting a review.

I. The reviewer shall also be entitled to take handwritten notes relating to the Source Code but may not copy the Source Code into the notes. Such notes will be labeled "CONFIDENTIAL SOURCE CODE SUBJECT TO PROTECTIVE ORDER."

J. No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected, except as otherwise provided herein.

17

Furthermore, no other written or electronic record of the Source Code is permitted except as otherwise provided herein.

   (iv) The Producing Party may exercise personal supervision over the Receiving Party when the Receiving Party is in the Source Code Review Room. Such supervision, however, shall not entail review of any work product generated by the Receiving Party, e.g., monitoring the screens of the stand-alone computer, or monitoring any surface reflecting any notes or work product of the Receiving Party. There will be no video supervision by any Producing Party in a way that would reveal the substance of the review.

   (v) The Producing Party may employ security measures on the Source Code Computer such as physical measures to prevent or detect tampering with the Source Code Computer, disabling of communication ports and software functionality, data encryption, access logging limitations on access privileges by the Receiving Party, and specification and configuration of the operating system and software tools to be used for inspecting the Source Code. The Receiving Party shall not attempt to circumvent any security measures implemented by the Supplier, under any circumstances. In order to verify that its Source Code has not later been altered, the Supplier may benchmark the materials before and after they are provided, but shall not install any keystroke or other monitoring software on the Source Code Computer.

   (vi) All persons who review Source Code on a Source Code Computer on behalf of a Receiving Party shall sign on each day they view Source Code on the Source Code Computer a log that will include the names of persons who enter the Source Code Review Room to view the Source Code and when they enter and depart each day. The Producing Party's outside counsel shall maintain the log, and any party shall be entitled to review the log.

18

(vii)    The Source Code Computer shall be configured with a means for selecting Source Code for printing as permitted herein. Reviewers may select portions of the Source Code to print only when reasonably necessary to facilitate the Receiving Party's preparation of filings, expert reports, contentions, and trial exhibits and shall print only such portions as are believed to be relevant to the claims and defenses in the case and are reasonably necessary for such purposes. Reviewers shall not print Source Code which has not been reviewed on the Source Code Computer in order to review the Source Code elsewhere in the first instance, i.e., as an alternative to reviewing them electronically on the Source Code Computer, as the Parties to this action acknowledge and agree that the purpose of the protections herein would be frustrated by such actions. All original printed pages of Source Code shall be retained by the Producing Party.

(viii)    At the request of the Receiving Party, the Producing Party shall, within three (3) business days of the request, provide three (3) hard copy print-outs of the Source Code that the Receiving Party believes in good faith is necessary to understand a relevant feature of an accused product. The file path and file name of each Source Code file (or excerpt thereof) to be printed shall be included in a header or footer on each printed page. Source Code print-outs shall be produced on Bates numbered pages. The Receiving Party may provide its printed copies of the Source Code to its experts. The Receiving Party of any Source Code shall maintain a log of all paper copies of the Source Code.

(ix)    If the Producing Party objects to the production of the requested Source Code because the request is excessive, it shall state its objection within three (3) business days from the Receiving Party's request for printed copies of the Source Code. For purposes of this paragraph, printed portions of Source Code that exceed four hundred fifty (450) total pages

19

for any software release shall be rebuttably presumed to be excessive and cannot be printed for a permitted purpose absent the agreement of the Producing Party or an order from the Court. A request for printing of a continuous block of more than forty (40) pages of Source Code shall be rebuttably presumed to be excessive and cannot be printed for a permitted purpose absent the agreement of the Producing Party or an order from the Court. The Parties agree to meet and confer within two (2) business days of service of any objection by the Producing Party to attempt to resolve such objection. If the Producing Party and Receiving Party cannot resolve such objection during this meet and confer, the Receiving Party may file a motion to compel the production of the requested Source Code.

(x)     In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's Source Code, printed copies of the Source Code maintained by the Receiving Party must be kept in a locked storage container in a secure location, accessible only to persons identified in paragraph 22(b), when not in use.

(xi)     For depositions, the Receiving Party may request that the Producing Party provide up to five (5) additional hard copies of each paper copy of the Source Code for use at a deposition. At least three (3) business days before the date of the deposition, the Receiving Party shall notify the Producing Party which portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Party's outside counsel for secure destruction in a timely manner following the deposition. This provision does not

20

prevent the attorney taking the deposition from bringing personally to the deposition a printed copy of the Source Code that contains work product notes for the taking of the deposition, which copy shall be retained by the deposing attorney at the end of the deposition. At least five (5) calendar days before the date of a deposition, or in the case of a deposition scheduled less than five (5) calendar days in advance, no later than 24 hours after scheduling such deposition, the Receiving Party shall notify the Producing Party if the Receiving Party wishes to have a Source Code Computer containing a complete copy of the produced Source Code available at the deposition. The computer upon which Source Code is made available at the deposition shall include appropriate software analysis tools as discussed above, provided the Receiving Party has, at its expense, provided the Producing Party with a license for such software tools in sufficient time to have them properly loaded on the deposition Source Code Computer.

(xii)    If a Receiving Party reasonably believes that it needs to submit a portion of Source Code (e.g., more than merely the name of a Source Code file) as part of a filing with the Court, (1) such filing must be made under seal, and (2) the Receiving Party may create electronic images or copies only as necessary to submit said Source Code as part of the Court filing, and shall store said images or copies in accordance with this Order's provisions for storage of Source Code. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order. Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic

21

copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

24. <u>NOTICE OF DISCLOSURE AS TO PROTECTED MATERIAL DESIGNATED "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" AND "CONFIDENTIAL –– OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"</u>

(a)   Prior to disclosing any material designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" OR "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" to any person described in Paragraphs 9(e) and 22(b)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i)     the name of the Person;

(ii)    an up-to-date curriculum vitae of the Person;

(iii)   the present employer and title of the Person; and

(iv)   a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant.

(b)   Within seven (7) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of

22

an objection at the end of the seven (7) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this seven (7) day period. If the Producing Party objects to disclosure to the Person within such seven (7) day period, the Parties shall meet and confer via telephone or in person within four (4) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have three business (3) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the Non-Disclosure Agreement (Exhibit A hereto) and serve it on all Parties.

25.     INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

23

(b)    Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

26.    INADVERTENT FAILURE TO DESIGNATE PROPERLY

(a)    If at any time before trial of this action a Producing Party realizes that it should have designated as Discovery Material as Protected Material that it previously produced without limitation, the Producing Party may so designate such material by so apprising all prior recipients in writing.  Thereafter, this Court and all persons subject to this Order will treat such designated portions) of the Discovery Material as Protected Material.

(b)    A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 26(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)    Notwithstanding    the    above,    a    subsequent    designation    of "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply

24

on a going forward basis and shall not disqualify anyone who reviewed such materials while they were not marked "CONFIDENTIAL," "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 21(c).

27.  INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER

(a)  In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

(b)  Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

28.  DISCOVERY FROM EXPERTS OR CONSULTANTS

(a)  Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(b)  Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the

testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(c)     No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

(d)     Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 28(a)–(c) shall be treated as attorney-work product for the purposes of this litigation and Order.

(e)     Nothing in this Protective Order, including Paragraphs 28(a)–(c), shall alter or change in any way the requirements in Paragraph 23 regarding Source Code, and Paragraph 23 shall control in the event of any conflict.

SO STIPULATED AND AGREED.

/s/ Kristopher R. Davis          /s/ Tod M. Melgar

Dated: October 5, 2020          Dated: October 5, 2020

SO ORDERED.

Dated:  October 6, 2020          _____Paul S Gardephe_____

Paul G. Gardephe
United States District Judge

26

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARKING TECHNOLOGY HOLDINGS LLC,

                Plaintiff,

              v.

PARK ASSIST, LLC,

                Defendant.

Civil Action No. 1:20-cv-03156-PGG

NON-DISCLOSURE AGREEMENT

I, _____, acknowledge that I have read and understand the Protective Order in this action governing the non-disclosure of those portions of Discovery Material that have been designated as Protected Material. I agree that I will not disclose such Protected Material to anyone other than for purposes of this litigation and that at the conclusion of the litigation I will return all discovery information to the Party or attorney from whom I received it. By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

Dated: _____

_____
[Signature]